# Charleston.

## GRAHAM et al. v. GRAHAM et al.

### Decided May 1, 1877.

1. J. G. by his last will and testament made in 1812, bequeathed to his daughter R., then the wife of G., a female slave named Dinah. Afterwards in the year 1813, said J. G. died, and his said will was in the same year duly proven and admitted to record in the county of Monroe. Before the death of said J. G., the said R. had children by her said husband G., who were living at the death of said J. G. After the death of said J. G., the said R. had other children by her said husband G. a number of whom were living at the death of said G., which occurred about two or three years prior to 1860. That said G., the husband of said R., had possession of said slave at the death of said J. G., or came into the possession thereof a short time thereafter, and continued in the possession of said G. until his death. After the death of said J. G. and during the life of said G., the said female slave had two children named Ira and Stuart. Said R. and G. lived together as man and wife until the death of G. HELD:

That said female slave so bequeathed to said R. by said will, passed to her said husband G., by virtue of his marital rights, and that before and at the time of his death the said female slave and her said increase were the property of the said G., and that after his death, his wife R., who survived him, had no interest in the said slaves (in the absence of a will of said G. directing otherwise) except as one of the distributees of her said husband.

2. On the 9th day of March, 1868, the said R , the widow of said G., deceased, and John Graham, James Graham and David Graham, three of the sons of said R. by her said husband G., and David G. Ballengee, made signed and sealed and delivered an agreement in writing in the words following, viz : "An article

*1877.*
*January Term.*

of agreement made and entered into, this 9th day of March, 1868, between Rebecca Graham, of the first part, and John Graham, James Graham, David Graham and David G. Ballengee, of the second part, witnesseth: For and in consideration hereafter to be described, the said Rebecca Graham. agrees and binds herself, her heirs, &c., to assign and convey to the said John Graham, James Graham, David Graham and David G. Ballengee, all the right, title, and interest that she may be entitled to by virtue of the last will and testament of her father, James Graham, deceased. But it is always to be understood that the said John Graham, James Graham, David Graham and David G. Ballengee, are to support the said Rebecca Graham in a comfortable manner during her life, or she is to have her support out of the said property; also the said John Graham, James Graham, David Graham and David G. Ballengee agree to pay all the costs of a suit which the said Rebecca Graham may be liable to pay, which suit was brought by Lanty Graham and others against her and John Graham; also the costs of an appeal which may be taken in said suit from the decree of the judge of the circuit court of Monroe county West Va. The said suit was brought in the county aforesaid to recover certain land and negr es claimed by them by the last will and testament of the said James Graham, deceased. And the said James Graham, David Graham and David G. Ballengee, agree to go security to carry up an appeal from the decree of the circuit court of the county aforesaid, to the Court of Appeals to set aside said decree, and the said John Graham, is hereby authorized by the said parties to order the clerk of the court to make out all necessary records to petition for an appeal in the aforesaid suit. And for the true performance of the above obligation, each party bind themselves, heirs, &c., in the penal sum of one thousand dollars, well and truly to be paid to either party that may be injured by a breach of the above contract. Given under our hands and seals this day and year first written."
After the death of said G. the husband of said Rebecca, the said female slave and her said sons Ira and Stuart, remained in the posession of said R., the widow of said G., and it does not appear that they were ever taken possession of by the personal representative of said G., deceased. Some time after the death of said G. the said R. his widow, caused the said slaves Ira and Stuart to be sold for $2,000.00 and she invested the proceeds of sale in a claim or debt against one Arbuckle, and some time before the date of the above recited agreement she assigned said Arbuckle claim, either absolutely or in trust for her use and benefit, to said James Graham, one of the parties of said agreement. The said fe-

male slave has always, since the death of said G., remained in possession of his said widow. It does not appear that said G. made a will disposing of said slaves or any of them. But it does appear that Henry J. Kelly, sheriff of Monroe county, is, as such, administrator of the estate of said G. deceased. The said John Graham, David Graham and David G. Ballengee, filed their bill in equity against said R. and James Graham, for the specific execution of said agreement claiming therein that said female slave and her increase and the proceeds of the sale of the increase invested in said Arbuckle claim or debt and such debt are embraced by said agreement of the 9th of March, 1868. It also appears that the said James Graham, deceased, in and by his said last will devised to the said R. a tract of some two hundred and eighty-six acres of land upon which the said G. and his said wife resided at his death and for many years prior thereto and which they did not convey away prior to the death of said G. HELD:

1877.
January Term.

Graham et al.
v.
Graham et al.

I. That said agreement of the 9th of March, 1868, made by and between the said R. of the first part and the said John Graham, James Graham, David Graham and David G. Ballengee, did not embrace or include the said slaves or either of them, or the proceeds of the sale of said slaves Ira and Stuart, or the said Arbuckle claim in which said proceeds were invested.

II. That the legal heirs, and personal representatives of said G. are not necessary parties to said suit.

III. That G. the husband of said R. at the death of J. G., became tenant by the curtesy of said tract of land so devised to his said wife R., and that upon the death of said G. the whole estate in said land survised to said R. and that she was entitled at the date of said agreement of the 9th day of March, 1868, to the said land in fee simple by virtue of the last will and testament of her father James Graham.

IV. Said agreement of 9th of March, 1868, does not with us, under the circumstances, amount to champerty or maintenance.

An appeal granted, upon the petition of James Graham, from a decree of the circuit court of Monroe county, rendered on the 23d day of May, 1873, in a cause in chancery then pending in said court, in which John Graham and others, were plaintiffs, and James Graham, Rebecca Graham and others, were defendants.

The case is fully stated in the opinion of the Court.

Hon. Homer A. Holt, Judge of the circuit court of Monroe county, rendered the decree complained of.

*Samuel Price,* for appellant.

*Frank Hereford,* for appellees.

HAYMOND, JUDGE, delivered the opinion of the Court:

It appears that on the 28th day of December, 1812, James Graham, of the county of Monroe, then a part of the State of Virginia, but now a part of the State of West Virginia, made and published his last will and testament, and that afterwards, in the year 1813, he died in said county. The said last will was afterwards in the year 1813, duly admitted to probate by the county court of said county. Sometime previous to the making of said will, Rebecca Graham, one of the daughters of said James, was married to one Joseph Graham.

The tenth clause of the said will of James Graham, is in these words, viz: " I give unto my daughter, Rebecca Graham, and her children, that plantation where she now lives, known by the name of Stephenson's Cabin. Also, I give unto her and her children, my negro girl, named Dinah, the land and negro never to be disposed of out of the family, nor the increase of the negro if any she has."

The thirteenth clause of the will is in these words, viz: "All the before mentioned legacies thus bequeathed to my children, I give it to them and their heirs forever, according to the way they are stated." It further appears, that the slave Dinah was either in possession of Joseph Graham at the death of said James Graham, or came into his possession soon thereafter, and that the said Dinah remained in the possession of said Joseph Graham until his death, which occurred recently (perhaps within a year or two) before October, 1859. It also appears that on the 5th day of October, 1859, Lanty

Graham, John Nolin and Florence his wife, Henry Miller and R. Martha Miller his wife, commenced suit on the chancery side of the circuit court of said county of Monroe, against Rebecca Graham, John Graham, Henry J. Kelly, sheriff of Monroe county, and as such, the administrator of the estate of Joseph Graham, deceased, (and John W. Lanius, late sheriff of Monroe county, and as such, administrator of the estate of Jane) Graham, deceased, with the will of said Jane Graham annexed, and afterward at November rules, 1859, they filed their bill in said cause against the defendants therein. The plaintiffs in the last named bill set out the making of said will by the said James Graham—his subsequent death and the admission of the will to probate. They filed with the bill as an exhibit, an official copy of the will. They allege in their bill, especially and in substance, the said tenth clause of the will. They also allege that said Joseph Graham died recently, within a year or two, prior to the commencing of the suit, and, that Henry J. Kelly, sheriff of said Monroe county, is his personal representative; that the children of the said Rebecca, living at the time of making of said will and probate thereof, were said Lanty Graham, John Graham, Florence Nowlin and Jane Graham, who died after making her last will, which, was admitted to probate, leaving R. Martha Miller her only child and heir, and whose estate was committed to J. W. Lanius, late sheriff of Monroe county, for administration with the will annexed; that the tract of land mentioned in the said tenth clause of James Graham's will contained about two hundred and eigthy-six acres, which is in the possession of the said Rebecca Graham, who is living on, and, occupying the same in connection with her son John Graham, who is one of the joint owners thereof, under said clause of said will; that the negro woman Dinah became the mother of two sons, Ira and Stuart; and she and they are living; that Dinah is old, and, in the possession of said Rebecca Graham, and, her son John; that said

slaves, Ira and Stuart are very stout, valuable men, worth each about $1,500, and have very recently been sold by the said Rebecca, and, her son John, and carried out of the country; that they cannot tell what price they brought; that by the will of said James Graham, the said Rebecca took an interest of one-fifth in the slaves, and land, and her interest of one-fifth in the slaves and land passed immediately to her husband, but her interest in the land survived to her; that each of her said four children took a like interest in the slaves and children; that said land and slaves were held in possession by the said Joseph Graham, as husband of the said Rebecca, during his life, and that his possession should be construed to be the joint possession of all the joint tenants and owners; that no partition of the land or division of the slaves was ever made, and now a division of the slaves cannot be made, as two of them are sold, and gone to parts unknown. But the said Rebecca, and John Graham should be made to account for the values thereof, and, compelled to pay to the plaintiffs, &c. They pray in their bill that the said land be divided under a decree of the court according to quality and quantity; that said Rebecca and John Graham be compelled to pay for the two slaves, Ira and Stuart, which they converted to their own use by sale; that the other may be sold and the funds divided, &c. At a circuit court held on the 27th day of April, 1860, the defendants Rebecca and John Graham filed their separate answers to said bill and the said Rebecca in her answer says:

"That it is true, as set forth in said bill, that James Graham, the ancestor of this respondent, departed this life after having made the will referred to in the bill of the said plaintiffs. She believes it also to be true that said will was admitted to record, as therein set forth. It is also true Joseph Graham, this respondent's husband, has departed this life. It is also true that the tract of land referred to in the will of James Graham aforesaid contains about two hundred and eighty-six acres, and

that it has been in the possession of this respondent and her husband up to the time of his death, and by this respondent ever since. It is not true that John Graham has had possession of said land as owner or part owner, nor is it true that John Graham ever set up any claim to said land by virtue of any provision in said will, or in any other manner, nor has any one of the children of this respondent ever claimed, or pretended to claim, the said land, or any part, as owner or part or joint owner, under and by virtue of any clause or provision of said will. This respondent has ever, from the date of her father's will, claimed to be the sole and exclusive owner of said land, and with her husband so claimed, held and enjoyed it up to her husband's death, and by herself since. She therefore relies upon time in quieting and settling her claim, and insists that the plaintiffs are completely and forever barred, if they ever had a claim or title, by the lapse of time.

"This respondent, however, insists that according to the true interpretation of the said will, she acquired a title in fee to the whole of said estate, and not to one-fifth only. If any difficulty occurred in interpreting said will from the language employed in the eleventh clause of said will, it was all removed by the language of the thirteenth clause, wherein the testator says in reference to the gifts previously made to *his children,* that he gives the several bequests '*unto them and their heirs forever*,' according to *the way they are stated.*'

"This respondent, further answering, says that it is true that she is now in possession of the old negro woman Dinah, who is the same woman referred to in her father's will. It is also true that the two boys, Ira and Stuart, were children of Dinah; that she held and disposed of these negro men since her husband's death. These slaves she held always as her exclusive property, allowing the claim of no one, and never hearing of any claim until very recently.

This respondent alleges that she had a complete title

1877.
January Term.

Graham *et al.*
v.
Graham *et al.*

(or rather her husband had) to Dinah before the death of James Graham, and she avers that her husband had the said Dinah in possession for more than five years before the death of the said James Graham. This possession, she insists, give, a complete title, irrespective of anything which was provided in the will."

The defendant, John Graham, in his answer, says " that he has seen and read the answer of his mother, the defendant, Rebecca Graham, and adopts the same as his own, and prays that it may be read as part of his answer so far as its language is appropriate and applicable." A number of depositions were taken and filed in the cause, and the circuit court made this decree in the cause on the 15th day of July, 1857:

" This cause came on this day to be heard upon the bill, answers of the defendants, Rebecca Graham and John Graham, replications, exhibits, examinations of depositions, facts agreed, and arguments of counsel. And it appearing that the bill has been filed, and *subpœna* returned executed against the defendants Kelly and Lanius for more than two months, and they still failing to appear and answer the bill, the same is taken for confessed as to them. And the court being of the opinion that the defendant Rebecca Graham and her four children, Lanty, Florence, John and Jane, each, under and by virtue of the will of James Graham, deceased, took an undivided estate of one-fifth in the tract of land and the said Dinah, in the bill and proceedings mentioned, and it not appearing that the right of the joint owners have been barred by the statute of limitation, or the lapse of time, and that they are consequently entitled to partition of said land, and an account for the value of said slave and her increase, and it is therefore adjudged, ordered and decreed, that William Hinton, surveyor, John Hinchman and George Alderson, who are hereby appointed commissioners for that purpose, do go upon the land in the bill and proceedings mentioned, and lay off and divide the same into five equal parts,

having regard to quality and quantity, and assign one of said parts in severalty to the plaintiff Lanty Graham, another of said parts to the plaintiffs John Nowlin, and Florence, his wife, one other of said parts to the plaintiffs Henry Miller and R. Martha, his wife, she being the heir and devisee of Jane Graham, deceased, one other of said parts to the defendant John Graham, and and the other part to the defendant Rebecca Graham, and that they make report of their proceedings to court.

"And it is further adjudged, ordered and decreed that Alfred Phillips, a master commissioner of this court, do take, state and report an account of the slave Dinah and her increase, their values at the time of the institution of this suit, if they remain unsold, their prices, if sold, and by whom sold, and to whom chargeable, also the value of their lives for five years before the suit was instituted, and to whom the same is chargeable, and any other matter deemed pertinent by himself, and which shall be required by either party," &c.

On the sixth of May, 1868, the court, by its decree, set aside the said decree of the 15th day of July, 1867, upon the petition of Rebecca Graham, and directed that the cause should be reheard. On the 25th of May, 1869, the court made this decree in the cause, viz :

"This cause came on this 25th day of May, 1869, to be further heard upon the papers formerly read and report of Alfred Phillips, master commissioner, the exceptions filed thereto by the defendant John Graham, which the court overrules, and the petition of James Graham and others to be made parties defendants in this cause, and was argued by counsel. Upon consideration whereof, and the court being of opinion that the account reported by said Phillips is erroneous in charging interest upon estimated rents and hires, and that the same should be modified to that extent and confirmed as to the residue; and it appearing that the plaintiff, Lanty Graham, is entitled to one-fifth, John Nowlin and Florence, his wife, to another fifth, and Henry Miller and R. Martha,

his wife, to another fifth of the said rents and hires, which will give to each of said three plaintiffs the sum of $210.11 against the estate of Joseph Graham, deceased, and will give to each of said three plaintiffs the sum of $585.80 as against the defendants, John and Rebecca Graham, with interest on $400, part thereof, the proceeds of the slaves Ira and Stuart, it is therefore adjudged, ordered, and decreed, that each of said three plaintiffs recover against the defendant Henry J. Kelly, administrator of Joseph Graham, deceased, the said sum of $210.11, with interest from this date, and one-half of their cost in this suit, to be levied of the goods and chattels of his testator in his hands to be administered; and that each of said three plaintiffs recover against the said John and Rebecca the sum of $585.80, with interest on $400, part thereof, from the 6th day of October, 1859, and with interest on the residue thereof from this day, and one-half the costs of this suit.

"And the court, upon a re-argument of the case, having no reason for any change in its opinion since the decree of the 15th of July, 1867, which was set aside and re-opened for the purpose of re-argument, doth therefore now reinstate and re-adopt the said decree as heretofore rendered, and this cause is continued for further proceedings upon the coming in of the report of the commissioners appointed by the decree of the 15th of July, 1867, to divide the lands in the bill and proceedings mentioned, and they were ordered to proceed to divide and report the same."

After this decree was entered, and on May 25, 1869, John Graham took an appeal from said decree to the Supreme Court of Appeals, and filed in the clerk's office of said circuit court, on May 26, 1869, an undertaking signed by said John Graham, David Graham and James Graham, by which they undertook that if the decree appealed from is affirmed, that the defendants will abide by and perform the said decree, and will pay the opposite party, and to any person injured all such costs and dam-

ages as they or either of them may incur or sustain by reason of said appeal. The appeal seems to have been perfected by filing notice with service on the plaintiffs in July, 1869. At the hearing and decision of the cause upon said appeal, the Supreme Court of Appeals held that the will of said James Graham gave said Rebecca Graham an estate tail in the land and slave mentioned, and under the operation of the statute, that said estate tail was converted into an estate in fee; and that Lanty, Florence, John and Jane, children of Rebecca Graham, took nothing by the said tenth clause of the said will of their grandfather, and reversed the said decree of the circuit court, and dismissed the bill with costs to the appellants in both courts. See Rebecca Graham et al. v. Lanty Graham et al., 4th West Va. R., p. 320. The cause was decided by the Supreme Court of Appeals at the January term thereof, 1870. It appears that on the 9th day of March, 1868, which was after the said decree of the 15th of July, 1861, and before the decree of the 6th day of May, 1868, setting aside said decree of the 15th of July, and directing the cause to be reheard, the plaintiffs in the cause at bar and the defendants therein, Rebecca and James Graham made and entered into a contract signed and sealed by each of them, as follows, viz:

" An article of agreement made and entered into, this 9th day of March, 1868, between Rebecca Graham, of the first part, and John Graham, James Graham, David G. Ballengee, of the second part, witnesseth :

" For and in consideration hereafter to be described, the said Rebecca Graham agrees and binds herself, her heirs, &c., to assign and convey to the said John Graham, James Graham, David Graham and David G. Ballengee, all her right, title, and interest that she may be entitled to by virtue of the last will and testament of her father, James Graham, deceased. But it is always to be understood that the said John Graham, James Graham, David Graham and David G. Ballangee are to support the

said Rebecca Graham in a comfortable manner during her life, or she is to have her support out of said property; also the said John Graham, James Graham, David Graham, and David G. Ballengee, agree to pay all the costs of a suit which the said Rebecca Graham may be liable to pay, which suit was brought by Lanty Graham and others against her and John Graham; also the costs of an appeal which may be taken in said suit from the decree of the Judge of the circuit court of Monroe county, West Virginia. The said suit was brought in the county aforesaid, to recover certain land and negroes claimed by them by the last will and testament of the said James Graham, deceased. And the said James Graham, David Graham, and David G. Ballengee, agree to go security to carry up an appeal from the decree of the circuit court for the county aforesaid; to the Court of Appeals, to set aside said decree, and the said John Graham is hereby authorized by the said parties to order the clerk of the said court to make out all necessary records to petition for an appeal in the aforesaid suit.

" And for the true performance of the above obligation, each party bind themselves, heirs, &c., in the penal sum of $1,000, well and truly to be paid to either party that may be injured by a breach of the above contract.

" Given under our hands and seals this day and year first written.

her<br>
" REBECCA R. ⋈ GRAHAM.     [Seal.]<br>
mark.<br>
" JOHN GRAHAM.              [Seal.]<br>
" JAMES GRAHAM.             [Seal.]<br>
" DAVID GRAHAM.             [Seal.]<br>
"DAVID G. BALLENGEE.       [Seal.]"

Afterwards, on the 17th day of November, 1870, John Graham, David Graham and David G. Ballengee, commenced suit on the equity side of the circuit court of said county of Monroe, against said Rebecca and James

Graham; and afterwards, on the first Monday in January, 1871, the plaintiffs in said suit filed their bill therein as follows: " That for many years there was pending in the circuit court of Monroe, a chancery cause, which had been instituted by Lanty Graham and others, against your orator John Graham, his mother, Rebecca Graham and others, to recover, for the benefit of the heirs of Joseph Graham, deceased, the husband of said Rebecca, a tract of land therein described, and the value of certain slaves which the said Rebecca had held, and was holding, under the will of her father. Prior to the institution of said suit, the said Rebecca had executed a bill of sale to your orator, John Graham, of the slaves referred to. The object of this was not really a sale, for your orator, John, paid nothing, but it was a mode adopted by which she might dispose of the said slaves to other purchasers, and in carrying out said purpose, your orator John did make sale of the said slaves to one Bledsoe at the price of $2,000, $500 of which was paid in cash, and the residue in two drafts, payable at the Staunton Bank, one for $1,000, and the other for $500. The cash aforesaid and drafts were immediately transferred by your orator John to his mother, the said Rebecca, who caused them to be invested in a bond by Matthew Arbuckle, of Greenbrier, to one Harvey Handley. This claim on Arbuckle was afterwards prosecuted to judgment, and some liability having arisen upon the part of the sheriff of Greenbrier, the claim was in some manner adjusted between the said Rebecca, or James Graham acting for her, and the sureties of the said sheriff. What is its present condition, your orators are unable to say. In consequence of the connection which your orator, John Graham, had with the slaves aforesaid, which was only that of an agent of his mother, he was made a party defendant to said bill by Lanty Graham and others, and the bill sought to make him liable for the value of said slaves and their hires.

At the —— term of the circuit court of Monroe, a

decree was pronounced declaring that the said Rebecca had no such claim as she had been asserting, either to the land which she claimed as aforesaid, or to the said slaves, and an account was directed to ascertain the value and hires of said slaves, and a partition of said land among the heirs-at-law of said Joseph Graham was also directed. Your orator, John, was held answerable for the value and hires of said slaves with the said Rebecca.

When it was ascertained that the decree aforesaid was about to be made operative, the said Rebecca transferred to James Graham, the defendant hereinafter named, the evidences of her claim growing out of the sale of the slaves aforesaid, which transfer, your orators charge, was without consideration and fraudulent, and with a view to hinder, delay, defeat, and defraud not only your orator, John Graham, but the other creditors of the said Rebecca Graham. They charge that the said James Graham had full notice and knowledge of the circumstances of the sale of said slaves as hereinbefore recited, and of the fraudulent design and purpose of the said Rebecca.

After the decree aforesaid, your orators, together with the said James and Rebecca, had a meeting for the purpose of determining what was to be done in reference thereto. Your orators were all interested in having said decree reversed and annulled. Your orator, John, because it unjustly held him answerable for the value and hires of said slaves, and your orators, David Graham and David G. Ballengee, because they were tenants of the land in dispute, under said Rebecca. They had been advised that the decree was erroneous and could be reversed, but the difficulty was in procuring the means necessary to effect the same. The said Rebecca was entirely without means, save the fund arising from the sale of the slaves aforesaid, which she placed beyond her control by her transfer to said James as aforesaid. After full consideration it was agreed and determined that your orators, with said James Graham, should undertake the prosecution of an appeal from said decree, and to

become bound, not only for the costs which had attended the prosecution of the defense in the circuit court, but whatever costs might be incurred in the prosecution of the appeal. In consideration of this understanding upon their part, and for the further consideration that they would bind themselves for the support of the said Rebecca during her life, she, the said Rebecca, agreed to convey to them all the interest which she had in this suit, and a written agreement to that effect was then and there entered into, a copy of which is herewith exhibited, marked C, and is prayed to be taken as part of this bill. The appeal was taken, and resulted in a decision reversing the said decree, and confirming the right of the said Rebecca to the land as well as to the slaves which she had asserted a claim to, as will be seen by a printed copy of the record of said cause, and a certified copy of the opinion and judgment of the Court of Appeals, which are herewith exhibited, marked A and B, and are prayed to be taken as part of this bill.

" Your orators spent large sums of money in maintaining the prosecution of said appeal, and on the payment of the costs which accrued in the court below, and in every respect complied with their understanding, as far as it was competent to do so. The said Rebecca continued to occupy the premises which had been involved in said suit, and was in every way comfortably supported and provided for. She made no complaint, and made no objection for some months thereafter to a compliance. Indeed, as will be seen by reference to a notice which she caused to be served on Lanty Graham, which is here exhibited marked F, she recognized the obligatory character of her contract with your orators, and took a necessary step to enable her to perform what she had engaged to do. More recently, however, she has been brought under the evil influences of said James Graham, and not only repudiated her engagement, but has actually gone so far as to make a conveyance to the said James Graham of the tract of land aforesaid, to be held

1877.
January Term.

Graham et al.
v.
Graham et al.

by said James in his exclusive right, as will be seen by a certified copy of said conveyance, which is also exhibited, marked G, and is prayed to be taken as part of this bill. Your orators charge that the conduct of the said Rebecca, as well as the said James Graham, in fraud of the rights of your orators, is in absolute violation of their solemn contract. Your orators charge that according to the meaning, spirit and intent of the contract aforesaid, they were to have their equal share of the proceeds of the sale of the slaves hereinbefore referred to, as was understood both by the said Rebecca and the said James Graham; notwithanding the said James, with the assent and by the connivance of the said Rebecca, had held on to said proceeds, and have failed and refused to allow your orators any portion of the same, all of which they charge is in violation of their contract, and of the rights of your orators.

"In tender consideration of the premises, and forasmuch as your orators are without relief, save in a court of equity, they pray that the said Rebecca and James Graham may be made parties defendant to this bill, and compelled to answer the same; that the deed of conveyance from said Rebecca to said James Graham may be set aside and annulled; that the contract herein referred to between your orators and the said James and Rebecca may be specifically enforced by compelling the said Rebecca to make a conveyance of the tract of land referred to, according to the terms of said contract; that proper provision may be made for the support of the said Rebecca during her life; that said James may be compelled to pay over to your orators their proper shares of the money which arose from the sale of the slaves referred to, and in the event that the said James has expended any portion thereof, that the said Rebecca, as well as the said James, may be held answerable for the same, and that your orators may have such other and further relief as their cause demands. May a writ of summons issue," &c.

On the 21st day of March, 1871, the defendant. James Graham filed his answer to the said bill as follows, viz:

" That the paper purporting to be the copy of a contract between the defendant, Rebecca Graham and John Graham *et al.*, filed with the plaintiffs' bill, is objected to as evidence, as it is not duly verified to make it admissible as evidence.

" Respondent admits that they entered into a contract in reference to the land willed to the said Rebecca Graham by her father, James Graham, deceased, and when the original is produced it will speak for itself; but he denies that the parties referred to in the bill, ever made any contract in reference to a judgment obtained by the said Rebecca against Matthew Arbuckle. That contract was dated on the —— day of ——, 1868, and before that time she had assigned, for value received, the said judgment to this respondent, to-wit: on the 15th day of June, 1867. A copy of said assignment is herewith filed as a part of this answer, marked No. 1; the original is left with Andrew Beard, of Greenbrier county, who furnished the copy. It is, therefore, plain that the contract could have had no reference to that fund; certainly respondent did not dream that such could be its interpretation. The whole of this fund has not been realized, but it is outstanding in the form of a bond on the said Andrew Beard and securities. This is the whole amount of the negro fund, if it was the negro fund, a fact which he does not know, that he ever had any connection with. If it was the negro fund, and that fact is deemed material in the cause, he calls for full proof thereof. Respondent does not deny that there was such a suit brought by Lanty Graham *et al.*, for the land and slaves as the one mentioned in the bill, and that it resulted as stated therein, but the appeal bond was not executed by the said David G. Ballengee, and he could therefore derive no advantage from that position. By the contract in reference to the land, &c., made by the said Rebecca Graham and the said John Graham *et al.*, the said John

and others were to furnish the said Rebecca with a competent support. Respondent was one of the contracting parties, and he furnished her support. They, all the parties contracting with the said Rebecca, took possession of parts of the farm, and have occupied them ever since, so that she could not have her support from the land, except as the same was furnished by respondent. The other parties, when applied to, refused to furnish anything, and actually gave her nothing. And this being a court of equity asking the specific execution of a contract, the parties must show that on their part they have done in good faith all that they obligated themselves to do, before the court can move in their favor; and this they cannot do. So sensible was the old lady of the great injustice the said parties were disposed to perpetrate upon both her and respondent, that she made the deed to the respondent referred to in the bill. This they both thought she had a right to do, as the other parties had so utterly failed to perform the contract on their part. Respondent knows nothing about the pretended bill of sale for the negroes from the said Rebecca to John Graham. He has reason to believe that such a thing was never done, and that is the word of his mother.

"At the time this Arbuckle fund was transferred to respondent, he had no notice that any one had the slightest claim upon it, except the said Rebecca, and he does not yet know any such thing, and he does not believe that any one had the slightest interest in it except her. But at the time the contract of March, 1868, was made, all the parties knew that the claim on Arbuckle was transferred to respondent for valuable consideration. Respondent denies that he committed any fraud, or had notice of any intention on the part of said Rebecca to commit fraud, upon any one, in taking or in executing on her part either the assignment of the debt on Arbuckle, or the deed to respondent. Respondent denies all the other allegations in said bill not herein specifically answered.

"And having made answer, he prays hence to be dis-missed," &c.

Exhibit No. 1, filed with the foregoing answer, is as follows:

"For value received, I do hereby assign and transfer to James Graham a judgment obtained by me in the circuit court of Greenbrier county, against Matthew Arbuckle, for $1,500, with the interest on the amount, and the costs, without any *recours* on me or my heirs.

"Witness my hand and seal, this the 15th day of June, 1867.

her

"REBECCA ⋈ GRAHAM. [Seal.]

mark

" Witness: JAMES T. DEMPSEY."

On the 23d day of June, 1871, the defendant, Rebecca Graham, filed her answer to said bill.as follows, viz:

" Your respondent, reserving to herself all the benefit of proper and legal exceptions to complainants' bill, answereth and saith:

" That it is true that some time in the spring of 1868 an agreement was entered into, between the complainants and your respondent and James Graham, relative to an appeal from a decree of the circuit court of Monroe county, which decree was rendered against your respondent and the said John Graham, and said agreement had particular reference to the comfortable support of your respondent during her lifetime. The parties were to apply for an appeal in the above case, and the said David Graham, James Graham and David G. Ballengee were to enter as securities in an appeal bond such as should be required for the carrying up of said cause. This the said David G. Ballengee refused and neglected to do, thus at once violating the contract as aforesaid. Your respondent has not been able to see the original contract upon which the complainants profess to sue, and the copy which is filed in the cause she verily believes is not a true copy, or if so, it was not correctly read to her.

Your respondent is not able to read or write, and would have to rely upon those dealing with her being honest, otherwise she could be imposed upon readily, but your respondent is advised that the copy of the pretended agreement as filed in the cause is not so verified as to make it admissible as evidence, and therefore objects to the same as such.

" The agreement as read to your respondent, and as entered into by her, had no relation whatever to the judgment that had been recovered against Matthew Arbuckle, or had no relation whatever to the funds arising from the sale of the negroes that had been made by John Graham; that judgment had been transferred previous to that time, to James Graham, for valuable consideration, and which fact was known to the complainants at the time of the aforesaid agreement. There seemed to be some doubt whether or not the said judgment could be made, and your respondent, deeming it very important to her that she should realize something from said judgment, proposed to James Graham to transfer to him the benefit of said judgment for the sum of $1,095, provided he would take the same without any recourse upon her, which proposition the said James accepted and has paid to her the said sum of $1,095. And your respondent is certainly released from any responsibility, provided the said judgment shall not be recovered by the said James. And your respondent having so disposed of said judgment, never once dreamed of conveying any interest in same to the complainants, and nothing of the kind was mentioned when the contract with the complainants was entered into. All that was intended to be included in said contract was the tract of land which your respondent claimed under the will of her father, and the chief consideration for entering into that contract was that your respondent should receive a comfortable support during her lifetime. Your respondent had means and money sufficient to pay the costs of the suit aforesaid, brought by Lanty Graham and others, as well as the

costs of an appeal, and your respondent did furnish money to the said John Graham for that purpose, and the said John was indebted to her, independent of that, but no portion of the costs which were recovered by the reversal of the decree of the circuit court of Monroe has ever been paid to your respondent, but the same has been retained by the complainants or a portion of them. All of the said complainants are indebted to your respondent, but do not offer to pay to her what is due to her. The said complainants have entirely failed to comply with their contract in giving a comfortable support to your respondent, indeed they have not furnished her with one dollar's worth of either provisions or clothing, since the day the contract was entered into, although they had each of them possession of a portion of the tract of land referred to in said agreement, and refused to pay even rent for the same. Your respondent, finding that the complainants would not comply with their agreement in giving her a comfortable support, and being advised that as they refused or neglected to comply with their agreement, that she had a right to dispose of her property so as to procure a support, she, therefore, after waiting more than eighteen months without any support from the complainants, contracted with James Graham to support her during her lifetime, and agreed to convey to him the tract of land as aforesaid in consideration thereof; and in accordance with said agreement your respondent executed the deed in the bill referred to, the said James alone, of all her sons, showing anything like a proper and natural feeling of a son for a mother, the said John and David treating her most unfeelingly, as no sons having even any respect for themselves could treat a mother. They even refused, when applied to previous to the 12th of September, 1870, to give her a cup of milk. The said James has always been kind to your respondent, and has agreeable to his contract supported your respondent comfortably, and has hired girls or ser-

vants to attend to her, and render her any assistance she needed.. Your respondent is advised, that as the. complainants have failed to carry out their contract on their part, but in truth have violated the same, that a court of equity cannot, will not, and ought not to, give them any relief. Your respondent has not been guilty of any fraud whatever towards .the complainants, · or any one else. Everything she has done in the premises has been done honestly and in good faith, and she feels confident, under the circumstances, that any other honest person would have acted as she has. She, therefore, prays hence to be dismissed with her costs about her suit in this behalf."

At a circuit court continued and held for the county of Monroe, at the court house thereof, on Friday, the 23d day of May, 1873, this decree was made and entered in the cause, viz:

"This cause coming on to be heard the — of May, 1873, upon. the bill of the plaintiffs, answers of the defendants James Graham and Rebecca Graham, and replications thereto, exhibits, depositions of witnesses, and the several exceptions taken by the plaintiffs, as well as the defendants, —— was argued by counsel. And the court being of opinion that the exceptions by the defendants to the plaintiffs' depositions are well taken, doth sustain the same, and there being nothing in the plaintiffs' exceptions to the defendants depositions, the same are overruled, and the defendants having excepted to the copy of the contract filed with the plaintiffs' bill as an exhibit; upon the ground that it. was a copy and not proved, the court sustains the exception so far as to rule the same out as evidence, but admits it as a part of the statement contained in the bill, which might be, and in the opinion of the court has been, sustained by the production and proof of the original contract. And the court being further of opinion that by the terms of the contract of March 9, 1868, between Rebecca Graham, of the first part, and John Graham, James Graham, David

Graham, and David G. Ballengee, of the second, the said Rebecca Graham bound herself to assign and convey to the parties of the second part all her right, title, and interest to which she was entitled by virtue of the will of her father, James Graham, deceased, and that the same included not only the tract of land of two hundred and eighty-six acres in the proceedings mentioned, but also the proceeds of the sale of the slaves which were claimed by her under the will of her father, which proceeds were represented by a bond on one Matthew Arbuckle, of Greenbrier county, amounting to some $2,400, with interest thereon, and the court being of opinion that the alleged transfer by Rebecca Graham, to James Graham, of the said Arbuckle debt, whether made for or without consideration, does not entitle him to hold the same to the exclusion of the plaintiffs, especially as he united in the contract aforesaid by which the said debt was agreed to be transferred to the parties to. that contract, and being also of opinion that the conveyance by the said Rebecca, to the said James, of the said two hundred and eighty-six acres, of the 12th day of September, 1870, was in fraud of the rights of the plaintiffs, doth adjudge, order and decree, that the said decree of the 12th September, 1870, be annulled and set aside, and that M. J. Kester, who is hereby appointed a commissioner for that purpose, do make a conveyance, with special warranty, to John Graham, David Graham, James Graham and David G. Ballengee, of all the right, title and interest which the said Rebecca Graham held in and to the tract of two hundred and eighty-six acres, as derived from the will of her father, James Graham, reserving in said deed a lien on said land in favor of said Rebecca Graham, for her support in a comfortable manner during her life; charging the said James and Rebecca Graham the sum of five dollars for the execution of the same. And the court doth further order and decree, that the proceeds of the sale of the slaves hereinbefore referred to, and known as the Arbuckle debt, is

1877.
January Term.

Graham et al.
v.
Graham et al.

the property of and belong to John Graham, James Graham, David Graham and David G. Ballengee, and that any evidence of said debt in the hands of said James Graham or Rebecca Graham, or any portion of the same which may have been collected by either, be delivered and paid over to M. J. Kester, commissioner of this court, who is hereby appointed a special receiver for that purpose, who shall collect and hold the same, subject to the provisions of this decree; and it is further ordered and decreed that commissioner Kester do take, state and report, an account showing how much of the said Arbuckle debt has been paid to either Rebecca Graham or James Graham, and when paid, and how much is still due and unpaid; and the said commissioner shall take a further account, showing how much money the said James Graham has actually and necessarily laid out and expended in and about the support of said Rebecca Graham since the rendition of the decree of the Supreme Court of Appeals in the case of Lanty Graham and others *v.* Rebecca Graham and others, and that he make report to this court, not only of the matters specially referred to him, but such other matters as he may deem pertinent or be required to report by either of the parties. And the court doth further order and decree that the plaintiffs recover against the defendants their costs of this suit. And the said Kester, before receiving the fund aforesaid, shall give bond with good security in the penalty of $5,000, with condition according to law, to be approved by the Judge of this court."

From this decree the defendant, James Graham, petitioned for and obtained an appeal to this Court from one of the judges thereof, in vacation, and it must now be determined whether there is error in said decree of such character as to require this Court to reverse the same. It is proper to remark here, that none of the children of said Rebecca Graham, legal heirs of Joseph Graham, deceased, were parties to the said suit of Lanty Graham, *et al. v.* Rebecca Graham, John Graham, *et al.,* except Lanty

Graham, Florence G. Nowlin, wife of John Nowlin, Martha R. Miller, wife of Henry Miller, and the only child of Jane Graham, who died after the death of James Graham, and who was a child of said Rebecca Graham, and the said four children of said Rebecca were living at the death of said James Graham, deceased. The bill in that case was filed exclusively to recover and enforce the rights of property of these four children, which were supposed to have been conferred upon and vested in said land and slaves, under the said tenth clause of the will of said James Graham, deceased, and, the Supreme Court of Appeals decided in that case on appeal, as we have seen, that said four children took nothing under said will, that the said tenth clause in fact and effect, vested in said Rebecca Graham an estate in fee in said land and slave, Dinah. It appears that subsequent to the death of said James Graham, the said Rebecca had other children by the said Joseph Graham, some of whom were living at his death, among whom is the defendant, James Graham. It also appears that all the children, and legal heirs of said Joseph Graham, deceased, are not parties to the cause at bar, but only such of them as are parties to the said agreement and contract made by the said Rebecca Graham, John Graham, James Graham, David Graham and David G. Ballengee. (For the sake of brevity, I shall hereafter call said agreement, Exhibit C). The said David G. Ballengee is a grandson of the said Joseph and Rebecca Graham. The personal representative of the said Joseph Graham is not a party to this suit. The cause at bar was instituted for the specific performance of said agreement, Exhibit C, and it only embraced all the right, title and interest that the said Rebecca Graham may be entitled to, by virtue of the last will and testament of her father, James Graham, deceased. The right, title and interest passed to the said Rebecca Graham, by the said will of her father, in and to the said slave, Dinah, passed to, and vested in her husband, Joseph Graham, by virture of his marital

rights as such husband, he having possession of said slave, Dinah, at the death of said James Graham, or acquired such possession about that time and continued therein until his death. This being so, the said slave, Dinah and her said increase, were at the death of said Joseph Graham, and for many years before, the property of said Joseph Graham, deceased, and not the property of said Rebecca Graham, his wife—nor did, or could said slaves survive to his said wife at his death, under the facts and law of this case. In the case of *Clelland v. Watson*, 10 Gratt., 159, where "the father of D, the wife of C, execute a deed, by which, in consideration of natural love and affection for D, and for the further consideration of $1 paid to him by D and C, he grants to D, for the use of herself and C, and their joint heirs, certain slaves. To have and to hold the said slaves to D and C, their heirs, &c. And he warrants the title to D and C. This deed is duly recorded. The slaves go into the possession of C and his wife, and, are held by them until C and D convey some of them to W, but there is no privy examination of D. C dies, leaving D, surviving him, who sues W for the slaves. Held : 1. The deed conveyed to D and C, a joint estate in the slaves. 2. The joint estate so conveyed to D and C, carried with it the right in the husband to dispose of it absolutely, after the same had been reduced into possession, and the deed to W, was an exercise of the marital right of the husband C, to dispose of said slaves ; and the title passed, by the deed, to W."

Slaves were personal estate until slavery was abolished. Code of Virginia 1860, chap. 130, §11 ; 1 Revised Code p. 431. The slave Dinah being personal estate, the property and ownership thereof vested in this case, in the said Joseph Graham, the husband of said Rebecca, by virtue of his marital rights under the law upon that subject. It seems to me clearly under the view I have taken of this subject, that said agreement, Exhibit C, can not, and ought not to be construed to embrace said slave

1877.
January Term.

Graham et al.
v.
Graham et al.

Dinah and her increase, but only embraces the said tract of land devised to said Rebecca Graham, by her said father, James Graham, by his said will. The said Joseph being the husband of said Rebecca, and she having had children by him he became in this case tenant by the curtesy of said tract of land. But at his death the whole estate in the land survived to said Rebecca. Rebecca Graham and James Graham, in their depositions taken in the cause, each swear that said slaves nor the proceeds of the sale of the two who were sold, were not included, or intended to be included, in and by said agreement C. The plaintiff, John Graham, in his deposition, says his mother had told him that she had assigned or let James Graham have the Arbuckle claim, but it was his *opinion* when said agreement, Exhibit C, was entered into, that it did away with the contract with James. And he further says that he does not recollect that there was anything said at the time the agreement, Exhibit C, was entered into, about the Arbuckle debt; neither of the plaintiffs, David Graham, or David Ballengee, state in their depositions, that it was the agreement or understanding of the parties to said agreement, Exhibit C, that the said slaves or the proceeds thereof, the Arbuckle claims, were embraced, or intended to be embraced by said agreement. The plaintiffs, however, took the deposition of one James T. Dempsey, twice, and filed each deposition in the cause, and he says substantially that defendant, James Graham, told him that the Arbuckle debt was included in said agreement, Exhibit C. But said James Graham in his evidence, contradicts the evidence of Dempsey flatly, and as before stated the defendants, James and Rebecca, both deposed that the Arbuckle claim was not intended to be included by the parties in said agreement, Exhibit C. A number of depositions of witnesses are filed, impeaching the character of said Dempsey for truth and veracity, and who state that the character of Dempsey for truth and veracity is bad, and that from said character they would not believe him un-

der oath.   On the other hand, the plaintiffs have filed the depositions of an equal or larger number of persons who swear that the character of said Dempsey is good and that they would believe him under oath.   If it was the agreement and understanding between the parties to said contract C, that the Arbuckle debt was included therein, it is strange to me, if the fact was regarded as material by the plaintiffs that they did not depose to the fact in their depositions.   They seem to have been content to rely upon Dempsey's evidence that defendant, James, had said that the Arbuckle claim was included.   The evidence of Dempsey is very much under a cloud, to say the least of it, and so made by other evidence in the cause to which I have referred, but without expressing an opinion as to the truth or falsity of the evidence of Dempsey in respect to what defendant, James Graham, may have said to him, or whether he said it or not, I am of opinion from the face of said agreement C, and the terms thereof, that said agreement C did not embrace said slaves, or Arbuckle debt, and that, from said facts and evidence in the cause, there was no mutual agreement or understanding between the parties to said agreement C, at the time it was made, that it should or was intended to embrace said slaves, or Arbuckle debt, and that if there was such understanding, it is immaterial in this cause, as it is no part of said agreement C.   Whatever interest the said Rebecca Graham had in said slaves at and after the death of her said husband (so far as disclosed by the record before us), was as a distributee of her husband's personal estate under the law as it then stood, and not by virtue of the will of her deceased father.   As under the view I have taken of the subject, the said agreement C cannot be considered as embracing said slaves, or the Arbuckle debt, and as this suit is for the specific execution of said agreement C, the legal heirs and personal representative of said Joseph Graham were not necessary parties to this cause.

The circuit court, for the reasons before stated, erred in ascertaining in its decree that said Arbuckle debt; by said agreement C, was agreed to be transferred to the parties to that agreement, and in decreeing that the proceeds of the slaves, hereinbefore referred to, and known as the Arbuckle debt, is the property of, and belongs to, John Graham, James Graham, David Graham and David Ballengee, &c.; or, in other words, that said decree is erroneous altogether, in so far as it contains the opinion of the court or decrees as to said slaves or the Arbuckle debt.

As before stated, the plaintiff, Ballengee, did not sign the undertaking given when the appeal was taken; but I infer from the evidence that the reason why he did not do so was that he was not present when it was executed, and was not informed when it would be executed. It was doubtless considered by those who did sign the undertaking, that their signing it was sufficient. It appears that plaintiff, Ballengee, paid his part of counsel fees for prosecuting said appeal, as also did the other plaintiffs. The amount of counsel fees paid by plaintiffs seems to have been $500.

It seems from the evidence that the defendant, Rebecca Graham, was to hold and use the land embraced in the contract, as she had theretofore done, until the final decision of the cause, which was then designed (as afterwards was so done) to be carried to the Supreme Court of Appeals. She continued to hold and use said land accordingly, the said James living with her, until, and after the decision of the said cause in her favor, by the Supreme Court of Appeals. It seems to me, from the evidence and said agreement C, that the circuit court did not err in directing its commissioner to take an account showing how much money the said James Graham actually and necessarily laid out and expended in and about the support of said Rebecca Graham, since the rendition of the decree of the Supreme Court of Appeals in the case of Lanty

Graham and others *v.* Rebecca Graham and others, instead of since the date of said agreement C; but I think the court should, at the same time, have directed the commissioner to inquire and report what amount of the money the said James Graham may have so laid out and expended, if any, should be paid by each of the plaintiffs.

It is claimed by the counsel for the appellant that the said agreement C is void, because it amounts to champerty, and he referred the court to the 4th book of Blackstone, side page 135. The doctrine laid down by Blackstone upon this subject has been very much modified by statute in this State. For instance, as to the assignment of causes in action, or a thing one hath the right to, but not the possession. By our law notes and single bills are assignable, and the assignee may sue in his own name. And accounts are also assignable, and real estate to which a person hath the right, but not the possession, may be sold and conveyed. Considering that three of the parties of the second part to the said agreement C were her sons, and the fourth her grandson, and the agreement C itself, and the circumstances under which it was made, I do not feel authorized to declare that said agreement amounts to champerty or maintenance with us. It appears that Rebecca Graham is eighty-five years old and upwards; that said James Graham lives with her on said land at the old domicil, and that he has supported her in so far as the said farm or land may have fallen short of furnishing her support since the decision of said cause of Lanty Graham *et al.* v. Rebecca Graham *et al.*, by the Supreme Court of Appeals, but it does not appear that he ever claimed to the defendants that the land did not furnish support to his mother, or claimed that plaintiffs should pay him anything because of money laid out and expended by him about the support of his mother. But it does appear that on the 12th day of September, 1870, only a few months after said cause was decided by the Supreme Court of Appeals, the said James

secretly, and in the woods, and in violation of said agreement, and in bad faith towards the plaintiffs, and with intent to defraud them of their rights under said agreement C, procured his mother, the said Rebecca, to make and acknowledge to him a deed conveying to him alone, for the sum of five dollars, all the personal property of said Rebecca, and the said tract of land, and for the further consideration that the said "James Graham covenants and agrees, and hereby firmly binds himself, heirs, &c., in the penalty of $2,000, to take care of and comfortably support and furnish the said Rebecca Graham as long as she may live. The failure to comfortably support the said Rebecca Graham, on the part of said James Graham, shall cause the forfeiture of the penalty herein mentioned, by the said James Graham to the use of the said Rebecca Graham." The deed contains covenants of general warranty, and is signed by said Rebecca Graham only.

I think from the evidence bearing on the subject that the said agreement has been so substantially complied with, as to entitle the plaintiffs, in a court of equity, to have said agreement C specifically executed, and, that the said deed from said Rebecca Graham to said James Graham should, because fraudulent, in so far as it conveys said tract of land, as to the rights of the plaintiffs, be declared null and void, and of no effect. And that a deed of conveyance should be made to the said John Graham, David Graham, James Graham and David G. Ballengee, for the said tract of land according to the true intent and meaning of said agreement, Exhibit C, and that such deed should convey to said John Graham, David Graham, James Graham and David G. Ballengee, jointly all the right, title and interest, which the said Rebecca Graham held in said tract of two hundred and eighty-six acres of land, claimed from the will of her father, James Graham, and also, all right and title that may have passed to the said James Graham from the said deed made by her to him for said land, dated the 12th

day of September, 1870, reserving in such deed of conveyance, a lien on said land in favor of said Rebecca Graham, for, and to secure, her support in a comfortable manner during her life, with leave to the said Rebecca Graham to apply to the said court by petition or bill, to enforce said lien from time to time as to said court in the exercise of a sound discretion may seem just and equitable. A commissioner should be appointed to make such deed.

I am unable to perceive any error in the decree appealed from in directing that said Rebecca Graham and James Graham should pay the costs of making the deed of conveyance to John, David and James Graham and David G. Ballengee, under the circumstances of this case, or in requiring them to pay the costs of the suit, or in any other respect other than I have hereinbefore ascertained. I have not been able to find in the record in this cause, any exceptions taken to any depositions filed by any parties, and none have been brought to our notice.

For the foregoing reasons, the said decree of the circuit court of the county of Monroe rendered in this cause, on the 28th day of May, 1873, must be reversed, and the appellant, James Graham, recover against the appellees, John Graham, David Graham and David G. Ballengee, his costs expended in this Court about the prosecution of his appeal. And this Court proceeding to render such decree as the said circuit court should have rendered, it is adjudged, ordered and decreed, that this cause be remanded to the said circuit court for such other and further proceedings therein there to be had as may be in accordance with the principles and points settled in this opinion, and further, in accordance with the rules and principles governing courts of equity.

DECREES REVERSED and cause remanded.